FILED

IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

97 MAR 11 AM 11:11

U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED

MAR 15

| | |
|---|---|
| ALAN DAVID WILKINS, | ) |
| Plaintiff, | ) |
| v. | ) CIVIL ACTION NO. 95-G-2526-S |
| BILLY McQUEEN TRUCKING, INC.; DAVID B. ALLDAY, | ) |
| Defendants. | ) |

MEMORANDUM OPINION

This action arises out of the collision of two tractor-trailer trucks after dark on I-20 East just outside of Birmingham, Alabama. The wreck occurred on December 5, 1993. It is undisputed that the truck of defendant David Allday[1] struck the rear end of the plaintiff's trailer. See Affidavit of Robert Goodner (an Alabama State Trooper who investigated the accident). The plaintiff alleges that Allday was negligent in allowing his truck to collide with the rear end of the plaintiff's trailer.

---

[1] Defendant Billy McQueen Trucking, Inc. has agreed that defendant Allday was acting within the course and scope of his employment at the time of the accident. (See Pre-Trial Order entered May 29, 1996.) A finding of liability on the part of defendant Allday will, therefore, be dispositive as to the liability of defendant Billy McQueen Trucking, Inc. Therefore, the court will only address the issue of Allday's liability.



Allday, however, denies that he was negligent and further raises the defense of contributory negligence. Allday's contributory negligence claim is that the plaintiff's trailer did not meet the lighting requirements of the Federal Motor Carrier Safety Regulations.

## FACTS

This case presents a somewhat interesting situation in that neither driver saw the accident. The plaintiff testified in his deposition as follows:

> Q: Okay, I understand you were hit from the rear; is that right?
>
> A: Yes, that's correct.
>
> Q: Okay. Did you see him approaching your vehicle?
>
> A: No, I did not.[2]

Defendant Allday testified as follows:

> Q: Do you remember the wreck happening?
>
> A: No, Sir.
>
> * * * *
>
> Q: Now, according to your answers to interrogatories, you don't remember the wreck happening, and you don't remember the five minutes before the wreck or the five minutes after the wreck; is that correct?
>
> A: Yes, Sir.
>
> * * * *

---

[2] Deposition of Allan David Wilkins, at p. 83.

> Q: Do you remember seeing the truck that you were involved in the wreck with?
>
> A: No, Sir.
>
> Q: At any time?
>
> A: No, Sir.[3]

The only eyewitness testimony concerning the wreck itself comes from the plaintiff who, although he did not see defendant Allday's truck strike him, was able to describe the impact.

> A: I was traveling east on I-20. .... I had checked my rearview mirror. I seen lights way behind me, and I was traveling about sixty, up and down, you know, providing (sic) what conditions of the road is. And all of a sudden, I heard a loud explosion and felt an enormous impact. I didn't know what it was, and I thought my truck had blown up, to be honest with you.
>
> So I immediately tried to get the truck to the side of the road, and I was scared. I had to gather my senses. Then I thought my truck was on fire, so I tried to get out of the truck as quickly as possible.
>
> So I got out of the truck, and I was dizzy, but I went around the truck, and I didn't see anything, and my truck wasn't on fire. I proceeded to the rear of the truck, and that's when I seen all the damage done to my — the back end of my trailer.
>
> I didn't know what had hit me. You know, I just knew something had hit me. I didn't know what it was. So I stumbled my way back to the truck ....
>
> And I got back out of the truck, and there was two people in a car that walked up, and they

---

[3] Deposition of David B. Allday at pp. 32, 36.

3

> was telling me they had ran over the debris in the road ....
>
> And at that time somebody hollered — somebody hollered from the woods .... The other people ran back down there. And that's when I first realized that the whoever he is —

Q: David [Allday]?

A: Yeah. He was down in the ditch stuck to a tree.[4]

The affidavit of one of the investigating officers sheds further light on the circumstances of the accident.

> I was an investigating officer for the wreck that occurred on December 5, 1993, on I-20 East involving Alan D. Wilkins and David B. Allday. I arrived at approximately 10:20 p.m. .... The roadway in this area is straight. .... There were no contributing road defects found at the scene.
>
> The weather was clear. It had not been raining and the road surface was dry. Vision was not obscured.
>
> I inspected both of the vehicles involved. I found there to be extensive damage to the rearend of Mr. Wilkins' trailer. It was clear that the rearend of his trailer was the point of initial impact. There was damage to the front of Mr. Allday's truck. It was clear that the front of his truck had been the initial point of impact in this rearend collision. .... There was debris from the collision found in the right hand lane. The location of this debris places the impact as having occurred within the right hand lane of I-20 East.
>
> Both drivers were visibly injured. Both obviously needed medical care. Both were carried from the scene to the hospital by emergency medical personnel.
>
> The speed limit on I-20 East was 65 m.p.h. at the time of this collision. Given the severity of the damage to the vehicles, it is apparent that Mr. Allday's truck was traveling a good deal faster than

---

[4] Wilkens depo. at 83-85.

4

>    Mr. Wilkins' truck at the time of the impact.  If Mr.
>    Wilkins was traveling at 60 m.p.h., it is my judgment
>    that based upon my education and experience that Mr.
>    Allday was traveling in excess of the speed limit.
>
>    In my inspection of the vehicles, I found no
>    contributing defects in Mr. Wilkins' tractor or trailer
>    which could have contributed to the collision.[5]

The above essentially constitutes all of the evidence in the record concerning the wreck itself.  This evidence is also undisputed.

### NEGLIGENCE *PER SE*

The plaintiff asserts that the above undisputed facts support a finding of negligence per se.  The plaintiff's argument is based upon Ala. Code § 32-5A-89(a), which provides:

>    The driver of a motor vehicle shall not follow another
>    more closely than is reasonable and prudent having due
>    regard for the speed of such vehicles and the traffic
>    upon and the condition of the highway.  Except when
>    overtaking and passing another vehicle, the driver of a
>    vehicle shall leave a distance of at least 20 feet for
>    each 10 miles per hour of speed between the vehicle
>    that he is driving and the vehicle that he is follow-
>    ing.

(1975).  The plaintiff argues that the very fact that defendant Allday collided with the rear-end of his trailer demonstrates that Allday did not maintain a safe following distance.  His argument is supported by two Alabama cases that overturned jury verdicts for defendants who rear-ended plaintiffs stopped at traffic lights.

---

[5] Affidavit of Robert Goodner, Jr.

In <u>Gribble v. Cox</u>, 349 So.2d 1141 (Ala. 1977), the Alabama Supreme Court considered whether a defendant who rear-ended a plaintiff who was stopped at a traffic light, was guilty of negligence <u>per se</u>. In <u>Gribble</u>, the defendant offered no excuse for rear-ending the plaintiff, and the court reviewed the law in Alabama on rear-end collisions.

> It has long been assumed by bench and bar in Alabama that one who drives his auto into the rear of another who is stopped in obedience to a traffic light is prima facie guilty of negligence. An extensive search for precedent to support this assumption fails to reveal authority precisely in point. The rule in this regard is well stated in 8 Am. Jur. 2d, supra, at § 769, p. 329:
>
>> "A motorist approaching an intersection is also required to have his vehicle under control so that he does not drive into the rear of a vehicle whose driver is obeying traffic signals by waiting for the red light to change."
>
> We hold this to be the rule in Alabama.

349 So.2d at 1144. In arriving at this conclusion, the court summarized the general rule concerning the exercise of due care for motorists traveling in the same direction.

> <u>Generally speaking, however, a motorist ahead owes no duty to a motorist to the rear except to use the road in the usual way</u>, in keeping with the laws of the road, and until he has been aware of it, by signal or otherwise, he has a right to assume either that there is no other motorist in the close proximity to the rear or that, being there, <u>the motorist to the rear has his vehicle under such control as not to interfere with the free use of the road in front of and to the side of him in any lawful manner</u>.

<u>Gribble</u>, at 1144 (quoting 8 Am. Jur. 2d, § 768, p. 328)(emphasis added).

In <u>Glanton v. Huff</u>, the Alabama Supreme Court again was faced with a rear-end collision involving a car stopped at a traffic light. 404 So.2d 11 (Ala. 1981). In <u>Glanton</u>, the defendant skidded into the rear of the plaintiff at low speed on a rain slick highway. The jury found in favor of the defendant and the plaintiff appealed. The court cited <u>Gribble</u> as establishing the rule for rear-end collisions at traffic lights in Alabama and concluded:

> Even viewing the evidence in a light most favorable to Huff, <u>it is beyond dispute that Huff had a duty to operate his vehicle so that he would not collide with Mrs. Glanton's automobile, that he breached that duty when he rear-ended Mrs. Glanton's automobile</u>, and that she suffered some injury as a result of that collision. Given such circumstances, we are compelled to conclude that the jury verdict for the defendant was contrary to the great weight of the evidence.

<u>Glanton</u>, at 13 (emphasis added).

In both <u>Gribble</u> and <u>Glanton</u>, the court overturned jury verdicts in favor of defendants whose vehicles collided with the rear-end of vehicles stopped at traffic lights. In <u>Gribble</u>, no excuse was proffered by the defendant and in <u>Glanton</u>, the court by implication found wet pavement an insufficient excuse. If the plaintiff in the instant case had been stopped at a traffic light when the accident occurred , <u>Gribble</u> and <u>Glanton</u> would clearly be controlling.

The Alabama Supreme Court subsequently addressed the issue of negligence <u>per se</u> in a non-traffic light scenario. In <u>Senn v. Alabama Gas Corp.</u>, 619 So.2d 1320 (Ala. 1993), the court

7

was again asked to review a jury verdict in favor of a defendant in a rear-end collision case. In <u>Senn</u>, the defendant ran into the rear of the plaintiff's vehicle after the plaintiff made a sudden stop to avoid colliding with the rear-end of a vehicle that had also stopped suddenly. The accident occurred in rainy conditions on a downhill slope. Following a jury verdict for the defendant, the plaintiff moved for a judgment notwithstanding the verdict on the issue of liability and for a new trial as to damages, or in the alternative, for a new trial on both issues. The supreme court upheld the trial court's denial of plaintiff's alternate motions. In <u>Senn</u>, the court was not faced with a situation in which the defendant offered no excuse for the accident. The court noted mitigating evidence.

> The evidence showed that [the defendant] was not exceeding the speed limit at the time of the collision. The evidence also showed ...that [the defendant] was traveling 'at least two car lengths' behind the [plaintiff's] truck when it stopped suddenly.

619 So.2d at 1323. The court distinguished the <u>Gribble</u> and <u>Glanton</u> cases.

> Common to both <u>Gribble</u> and <u>Glanton</u> was the occurrence of a rear-end collision under circumstances exhibiting a clear lack of reasonable care on the part of a defendant while approaching an intersection at which the plaintiff's vehicle was stopped. <u>The evidence in the present case, however, shows that the driver of the fire medic truck [the plaintiff] and, consequently, Sizemore [the defendant] were taken by surprise at the suddenness at which they were forced to stop their vehicles</u>. This evidence, in conjunction with the evidence establishing that Sizemore was not exceeding the legal speed limit and that he was following "at least two car lengths" behind the fire medic truck,

8

> provided the basis for a finding that this accident occurred notwithstanding the exercise of due care.

619 So.2d at 1323-24 (emphasis added).

The court in <u>Senn</u> did not rule that <u>Gibble</u> and <u>Glanton</u> do not apply to situations involving moving vehicles, but rather that the defendant had offered an excuse for rear-ending the plaintiff sufficiently supported by the evidence so as to create a question for the jury. Therefore, the situation was distinguishable from that in <u>Gribble</u> and <u>Glanton</u>. The court cannot conceive of any reason the rule established in <u>Gribble</u> and <u>Glanton</u> should not extend to cases in which the lead vehicle, though moving, is obeying the rules of the road at the time it is rear-ended. It would be illogical to hold that one who, without excuse, rear-ends a vehicle stopped at a traffic light is guilty of negligence <u>per se</u>, but that one who, without excuse, rear-ends a vehicle traveling in the same direction on an interstate highway is not. Therefore, the court concludes that the rule of <u>Gribble</u> and <u>Glanton</u> extends to such cases and that <u>Senn</u> merely represents the application of that rule in a case where the defendant has proffered an excuse for the rear-end collision that gives rise to a question of fact for the jury.

The instant case is distinguishable from <u>Senn</u> in that there is no evidence the plaintiff made any sudden change in his speed or lane position immediately prior to the accident. In fact, the only evidence in the record (the plaintiff's deposition

9

testimony and that of the investigating officer) is that the plaintiff made no such change. Also, the only evidence in the record tends to show that defendant Allday was speeding at the time of the accident.[6] The only remaining excuse suggested by defendant Allday for the accident is that the plaintiff's trailer was insufficiently lighted. This excuse is also raised as part of defendant Allday's contributory negligence defense and will be addressed below.

CONTRIBUTORY NEGLIGENCE

The defendants have argued that the plaintiff was guilty of contributory negligence in failing to have the required lights on the rear of his trailer. They have also argued, for this reason, that a jury could find Allday was not negligent even though he clearly collided with the rear of plaintiff's trailer.

---

[6] The defendants in brief assert that Allday testified he was not speeding at the time of the accident. Because he testified he does not remember the five minute period prior to the accident, such an assertion cannot be based upon personal knowledge. In fact, Allday's deposition testimony is to that effect. At page 92 he is asked whether he has any personal knowledge of his speed and he answers that he does not.
  The defendant's brief also refers to a police report allegedly estimating that Allday was traveling at 65 MPH at the time of the wreck. The brief refers to page 77 of Allday's deposition. The only reference to the officer's report is contained in a question by the defendants' attorney. The report itself does not appear to be in the record.
  Even if Allday was not speeding, he was still required to maintain a safe following distance. Therefore, it is not necessary for the plaintiff to demonstrate that Allday was speeding in order to establish his liability.

This argument is based upon the alleged failure of the plaintiff's trailer to comply with the Federal Motor Carrier Safety Regulations. The defendants have submitted a copy of a photograph of the plaintiffs trailer taken afer the wreck that they allege show plaintiff's non compliance. The photo shows the rear bumper of plaintiff's trailer to be missing. It also apparently shows the absence of any lights across the top of plaintiff's trailer. The defendants argue that the absence of lights across the top of plaintiff's trailer is a violation of the federal safety regulations.

  The Affidavit of Danny Coats, submitted by the plaintiff, contains a picture, which he says is a fair and accurate depiction of the type of lighting arrangement on the plaintiff's trailer at the time of the wreck. It shows that the bumper of plaintiff's trailer contained at least seven lights and that there were numerous reflectors along the top of the trailer. The defendants' argument focuses on the absence of lighting along the top of the trailer. However, the regulation relied upon by the defendants provides that the trailer's three red rear identification lights and two amber clearance lights should be "as close as practicable to the top of the vehicle." 49 C.F.R. § 393.11, Table 1. Danny Coats, in his affidavit, states that on the type of trailer in question, the placement along the bumper is as high as practicable. Additionally, he states that "[t]his is the most common lighting design for trailers and complies with all govern-

ment regulations." Although his conclusion that the lights complied with all government regulations is not controlling on the issue of compliance, the defendants have introduced no evidence demonstrating that it would be practicable to place the lights any higher than they were. Because the defendants bear the burden of proving contributory negligence, they have not introduced an issue for trial as to the non-compliance of plaintiff's trailer with the federal lighting requirements.

The lighting requirement for trailers in Alabama is found at Ala. Code § 32-5-240(c)(1975). It provides for one tail lamp, two clearance lamps, two reflectors, and one stop light on the rear of trailers such as the one in question. Although the defendants have not argued that the plaintiff's trailer failed to comply with this requirement, the affidavit of Danny Coats and the plaintiff's own testimony demonstrate plaintiff's compliance with the Alabama lighting requirements.

Even though the defendants have not introduced an issue for trial as to the non-compliance with federal and state lighting requirements, any non-compliance would be irrelevant in this case. The defendants have not cited any authority for the proposition that violation of the federal lighting requirements constitutes negligence _per se_. Nor has the court's independent research revealed any case holding a violation of the federal lighting requirement negligence _per se_. The defendants have not disputed plaintiff's compliance with the Alabama requirements.

12

Therefore, in order to establish contributory negligence based upon non-compliance with lighting regulations, the defendants must establish that the non-compliance was a proximate cause of the accident.

There is no evidence in the record that indicates the lighting of plaintiff's trailer in any way contributed to the cause of the accident. The only direct evidence in the record concerning the lighting on the plaintiff's trailer at the time of the accident comes from the plaintiff himself. He testified that his trailer had seven lights along the rear of the trailer and that he had checked their operation earlier in the day.

> Q: Do you know anything about the lights on your trailer at the time of this accident?
>
> * * * *
>
> A: They were all working.
>
> Q: How do you know that?
>
> A: Because I checked them.
>
> * * * *
>
> A: When I did my pretrip inspection.
>
> Q: When did you do that?
>
> A: When I left Memphis.
>
> * * * *
>
> Q: In looking at the photographs that you've supplied, Mr. Wilkins, show me where the lights are on the trailer.
>
> A: They are not on there.

Q: Where are they?

A: David Allday knocked them off.

Q: Where should they be?

A: Right across here (indicating).

* * * *

Q: Are there any lights at the top?

* * * *

A: No, just reflective tape up at the top.

Q: Did you have any lights running across the top of your trailer?

A: No, Sir.

Q: How many lights did you have on the rear?

A: Just the standard seven.

Q: Well, how many lights come on if you have your headlights on?

A: Seven.[7]

Therefore, the only evidence in the record is that the plaintiff had at least seven working lights across the rear of his trailer at the time of the accident. Any conclusion that the lights were not there, or were not working at the time would be based upon mere speculation, there being no evidence suggesting they were not. Defendant Allday has no recollection of the five minute period preceding the accident and, therefore, can offer no evidence to support the contention that the lighting of plain-

---

[7] Wilkins Depo. at 122-125.

tiff's trailer in some way contributed to the accident. He has not testified that he did not see the plaintiff's trailer prior to the wreck because of insufficient lighting. There is no evidence from which a jury could reasonably conclude that the lighting of plaintiff's trailer was in any way a proximate cause of the accident. Therefore, no genuine issue for trial exists as to defendants' contributory negligence defense.

## CONCLUSION

There is no evidence in the record supporting any excuse for defendant Allday having collided with the rear-end of the plaintiff's vehicle. In fact, defendant Allday does not even assert an excuse. He does not allege that the plaintiff made a sudden change of speed or lane position. He does not even allege that he did not see the plaintiff's truck because it was improperly lighted. Therefore, based upon Alabama case law, the fact that defendant Allday collided with the rear-end of plaintiff's trailer (without excuse) while the plaintiff was operating his truck in accordance with the rules of the road establishes that the defendants are guilty of negligence per se.

As discussed above, the undisputed evidence in the record demonstrates the plaintiff's trailer was properly lighted prior to the wreck and that the lights were operating at the time of the wreck. The only suggestion to the contrary is a photograph showing the absence of the plaintiff's rear bumper, and,

15

therefore, the absence of the lights attached thereto.  In light of the severity of the wreck, this raises no inference that the bumper was not present prior to the wreck.  Nor does this suggest the lights, that both the plaintiff and Danny Coats testified about, were not attached to the bumper prior to the wreck.  This would be akin to suggesting defendant Allday was driving without working headlights based upon a photo of defendant Allday's truck after the wreck showing the headlights broken.  In addition, there is a complete lack of evidence suggesting that the lighting of the plaintiff's trailer — assuming *arguendo* that it was insufficient — contributed in any way to the accident.  Therefore, the defendants have failed to raise an issue for trial as to an essential element — causation — of their contributory negligence defense.  The burden is upon the defendants to introduce an issue for trial as to the contributory negligence of the plaintiff.  This, the defendants have failed to do.

In short, there exists no genuine issue for trial as to the defendants' liability on the plaintiff's negligence claim, and the plaintiff is entitled to a judgment as a matter of law on that issue.  There also exists no genuine issue of fact as to the defendants' affirmative defense of contributory negligence and plaintiff is entitled to a judgment as a matter of law on that defense.  As to the plaintiff's claims for wantonness on the part of the defendants and the issue of damages, there remain issues

of fact for trial.  The court is of the opinion that the parties should mediate those claims.

Separate orders will be entered contemporaneously herewith.

DONE this \_\_11th\_\_ day of March 1997.

_____
UNITED STATES DISTRICT JUDGE
J. FOY GUIN, JR.